IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAAD M. SOLIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1378 (GMS) |
| | ) | |
| STANLEY TAYLOR; PAUL HOWARD; | ) | |
| THOMAS CARROLL; LAWRENCE | ) | JURY TRIAL DEMANDED |
| McGUIGAN; JAMES LUPINETTI; DAVID E. | ) | |
| PIERCE, Jr.; JOSEPH B. RICHARDSON; | ) | |
| RONALD HOSTERMAN; CERTAIN | ) | |
| UNKNOWN INDIVIDUAL EMPLOYEES OF | ) | |
| THE DELAWARE DEPARTMENT | ) | |
| OF CORRECTION; and STATE OF | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| CORRECTION, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF SAAD SOLIMAN

I, Saad M. Soliman, being duly sworn according to law, hereby depose and say as follows:

1. I am the Plaintiff in the above-captioned matter.

2. This Affidavit is intended to clarify assertions that were contained in my Affidavit dated February 7, 2005.

3. Due to my incarceration and the time limitations with respect to filing my Answering Brief on Defendants Motions to Dismiss/Summary Judgment communication with my attorneys regarding my review of these documents was difficult. With respect to the February 7, 2005 Affidavit, my attorneys were required to prepare the Affidavit prior to their visit with me on that date. I was given very little time to review the Affidavit and as a result could not effectively scrutinize the averments made therein. Upon reflection it contained language that indicated that I filed grievances while housed in "The Hole." This was not the case.

4. While I was housed in "The Hole", I was not permitted by DCC staff to file any grievances. I was instructed that I would have to wait until I was released from "The Hole" and

1

indeed, did have to wait until I was released from "The Hole" before I was given access to a pen and any grievance forms.

5. Once released from "The Hole" I was housed in the SHU, maximum security. During this time, I filed numerous grievances. The only responses that I received to these grievances were in response to one or two that raised the issue of my not receiving my mail.

6. While housed in the SHU, I found that the grievance procedure for inmates at that security level is flawed in that inmates are not permitted to personally place their grievances in the locked grievance boxes. As a result, inmates must give their grievance forms to the corrections officer on duty and trust that the corrections officer drops the grievance into the secured grievance box. While housed in the SHU, I filed a grievance over this flaw in the system, but received no response.

7. There is no posted procedure anywhere in the prison that instructs inmates on how to properly utilize DCC's grievance process. I was required to learn how to utilize the process through explanations given by other inmates. Institutional rules are to be posted in an area where every inmate is to have reasonable access.

8. Every grievance that I have filed since instituting this lawsuit indicated that it was to be carbon copied to my attorneys. I was informed that they only manner in which they received copies of my grievances was through copies that I supplied them.

9. On February 3, 2005, nearly nine months after the incident with the "Muslim Oil," I was re-charged with the crimes arising from that incident. I was already absolved of those alleged crimes. I understand that under institutional rules, charges must be addressed within 90 days of the incident. The following is my account of the events that took place that day.

10. While I was being processed on the charges, Defendant Richardson instructed Major Holman and Captain McCrawer to remove all photos, paperwork and other materials out of my cell. Included in the items removed was legal material, including correspondence to and from my attorneys, as well as my journal. My journal included entries that accounted for the grievances that I filed while incarcerated in the SHU.

11. The remainder of my property was also taken from me. As of February 18, 2005, I have yet to have my property returned.

12. There is an institutional policy that when an inmate is moved from MHU to SHU, he must receive his property within 72 hours.

13. According to policy, everything that is allowed in the MHU is allowed in the SHU except toenail clippers and razors.

14. During the course of the events that took place on February 3, 2005, Defendant Richardson stated to me, "pretty soon your little tirade for attention will be over too, you'll see then whose gonna help ya?"

15. I understood this comment, in conjunction with the timing of this event vis-a-vis the filing of my Answering Brief to mean that Defendant Richardson orchestrated the events of February 3, 2005 and confiscated my legal materials and journal in an effort to frustrate the filing of my Answering Brief.

16. Corrections Officer Wells informed me that his superior Captain McCraver was instructed by Defendant Richardson to confiscate my materials and write me up for having a religious necklace and a ring. I was written up for possessing these items; both of which are permitted items at DCC.

17. I believe that Defendant Richardson made this instruction to Captain McCraver in order to take further retaliatory actions against me and to place me back into maximum security, SHU.

_____
Saad M. Soliman

SWORN TO AND SUBSCRIBED before
this 18TH day of February, 2005

_____

3