IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAAD M. SOLIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1378 (GMS) |
| | ) | |
| STANLEY TAYLOR; PAUL HOWARD; | ) | |
| THOMAS CARROLL; LAWRENCE | ) | JURY TRIAL DEMANDED |
| McGUIGAN; JAMES LUPINETTI; DAVID E. | ) | |
| PIERCE, Jr.; JOSEPH B.RICHARDSON; | ) | |
| RONALD HOSTERMAN; CERTAIN | ) | |
| UNKNOWN INDIVIDUAL EMPLOYEES OF | ) | |
| THE DELAWARE DEPARTMENT | ) | |
| OF CORRECTION; and STATE OF | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| CORRECTION, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF TIMOTHY J. WILSON

I, Timothy J. Wilson, being duly sworn according to law, hereby depose and say as follows:

1.    I am an attorney for the Plaintiff in the above-captioned matter.

2.    On Monday, February 7, 2005, I met with Mr. Soliman and discussed matters that are alleged in the Amended Complaint and the Statement of Facts contained in Mr. Soliman's Answering Brief.

3.    Due to the logistics of working with an inmate incarcerated in the DCC, Mr. Soliman's Affidavit had to be drafted prior to my trip to DCC on February 7, 2005. As a result it contained language that Mr. Soliman filed grievances while housed in "The Hole." Mr. Soliman had very little time to review and sign the affidavit and therefore this inconsistency was not discovered until after my meeting with Mr. Soliman and after I had time to review my notes and reflect on his statements to me.

1

4.      Mr. Soliman stated to me, in unequivocal terms, that during the period of time that Mr. Soliman was incarcerated in "The Hole", he was not permitted by DCC staff to file any grievances. He was instructed that he would have to wait until he was released from "The Hole" and indeed, did have to wait until he was released from "The Hole" before he was given access to a pen and any grievance forms.

5.      Once released from "The Hole" Mr. Soliman was housed in the SHU, maximum security. During this time, Mr. Soliman stated that he filed numerous grievances. The only responses that he received to these grievances were in response to one or two that raised the issue of his not receiving his mail.

6.      Mr. Soliman indicated that the grievance procedure for inmates who are housed in the SHU, is flawed in that the inmates are not permitted to personally place their grievances in the locked grievance boxes. As a result, the inmates must give their grievance forms to the corrections officer on duty and trust that the corrections officer drops the grievance into the secured grievance box. While housed in the SHU, Mr. Soliman filed a grievance over this flaw in the system, but received no response.

7.      Mr. Soliman stated that there is no posted procedure anywhere in the prison that instructs inmates on how to properly utilize DCC's grievance process. Inmates are required to learn how to utilize the process through explanations given by other inmates. Institutional rules are to be posted in an area where every inmate is to have reasonable access.

8.      Mr. Soliman stated that every grievance that he filed was carbon copied to his attorneys. Mr. Soliman was surprised, as was I, that we have received no carbon copies of Mr. Soliman's grievances from DCC.

9.      Mr. Soliman stated that, on February 3, 2005, nearly nine months after the incident with the "Muslim Oil," Mr. Soliman was re-charged with the crimes arising from that incident. Mr. Soliman has already been absolved of those alleged crimes. Mr. Soliman asserts that under institutional rules, charges need to be addressed within 90 days of the incident. The following is Mr. Soliman's account of events that took place that day.

10.     While Mr. Soliman was being processed, Defendant Joe Richardson instructed Major Holman and Captain McCraver to take all photos, paperwork and materials out of Mr. Soliman's cell. Included in the items removed were Mr. Soliman's legal materials, including correspondence to and from his attorneys, and his journal. Mr. Soliman's journal included entries that accounted for the grievances that he filed while incarcerated in the SHU.

11.     During the course of the events that took place on February 3, 2005, Defendant Richardson stated to Mr. Soliman, "pretty soon your little tirade for attention will be over too, you'll see then whose gonna help ya?

12.     Mr. Soliman believes, based upon the timing of this event as well as Defendant Richardson's statement to Mr. Soliman, that Defendant Richardson orchestrated the events of February 3, 2005 and confiscated these materials in an effort to frustrate Mr. Soliman's filing of his Answering Brief.

13.     Lt. Steve Boone informed Corrections Officer Wells that his superior Captain McCraver had been given orders by Defendant Richardson to confiscate and write Mr. Soliman up for having a religious necklace and a ring.  Both of these items are permitted items at DCC.

14.     Mr. Soliman believes that Defendant Richardson made this instruction to Captain McCraver in order to justify placing Mr. Soliman back into maximum security, SHU.

Timothy J. Wilson


SWORN TO AND SUBSCRIBED before
this 8th day of February, 2005

ANTHONY J. IANNINI
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2007